# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN A. BAMBERG, JR., | ) |
| | ) |
| Plaintiff, | ) 13 C 7650 |
| | ) |
| v. | ) Judge Jorge L. Alonso |
| | ) |
| CITY OF EVANSTON, a municipal corporation, OFFICER J. WRIGHT (STAR #157), and OFFICER J. NEIMAN, (STAR #140), | ) ) ) ) |
| | ) |
| Defendants.[1] | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants for their alleged violation of his Fourteenth Amendment rights and for malicious prosecution and indemnification. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 56 motions for summary judgment. For the reasons set forth below, the Court grants the motions.

## Facts

On September 30, 2010, Marcus Davis was shot and killed in Evanston while sitting in his car with his fiancee Tuwanda Smith. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 4; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 4.) Smith saw the shooter, whom she knew as Bird and recognized because he had had other altercations with Davis. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 5-7; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 5-7.) Smith repeatedly told the first officers on the scene that "Bird" did it. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 20-21; Pl.'s Resp. Officers' LR

---

[1] Plaintiff also sued unknown Evanston police officers but never identified or named them as defendants. The Court therefore dismisses them from this suit.

56.1(a) Stmt. ¶¶ 17-18.) Plaintiff goes by the nickname Byrd. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 60; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 75.)

The Evanston Police Department and other members of the NORTAF Crime Task Force, a group comprised of thirteen northeast Cook County suburban police departments, were involved in the Davis murder investigation. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 8-9; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 8-9.) Some but not all Evanston police officers are part of NORTAF. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 10; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 10.) Defendant Nieman is a member of NORTAF, and defendant Wright is not, but both were involved in the Davis investigation. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 12-13; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 12-13.) However, neither defendant was in charge of the investigation. Rather, the NORTAF chain of command for the investigation from top to bottom was: Task Force Commander Dennis McEnery from the Niles Police Department, Operations Commander John Walsh from the Lincolnwood Police Department, Team Leaders Ryan Glew from the Evanston Police Department and Kyle Murphy from the Wilmette Police Department, and Neiman and Wright. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 15; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 15.)

Smith was taken from the scene to the hospital for treatment of injuries she received during the incident. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 22; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 20.) Neiman was assigned to compile a photo array containing plaintiff's picture and show it to Smith at the hospital. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 23-24; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 21-22.) Neiman prepared the photo array using a system called I-CLEAR, which he previously had been trained to use. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 25-27; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 23-25.)

At 12:30 a.m. on October 1, 2010, Neiman met with Smith in her hospital room and gave her a photo spread advisory form, which Smith read, understood, and signed. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 32-33; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 30, 33.) The advisory states: "I understand that the suspect may or may not be identified in the lineup/photospread;" "I understand that I am not required to make an identification of a suspect;" and "I do not assume that the person administering the lineup/photospread knows which person is the suspect." (Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 34.)

After Smith signed the form, Neiman showed her the photo array, which consisted of six photos on one page, the third of which was a photo of plaintiff. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 34; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 35-36.) Smith did not identify any photo as the shooter and said that photo four was Bird. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 35; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 36.)

Around 2:00 a.m., defendant Wright and a non-party detective took Smith from the hospital to the Evanston Police Department. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 37; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 40-41.) At the police station, Smith said she had not picked the shooter from the array at the hospital because she was scared. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 38; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 42.) Smith told Wright she had seen the person she knew as Bird in the photo array she viewed at the hospital but had not identified his photo because she was scared. (Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 46-47.)

After Smith made this statement, Neiman compiled a second photo array, had Smith read and sign another photo array advisory, and then, in Wright's presence, showed the array to Smith. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 39-41; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 44, 48-49,

3

51.) Plaintiff's photo, which was the only one that appeared in both the first and second arrays, was photo two in the second array. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 41; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 52-53.) Smith immediately identified photo two as Bird. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 42; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 54.)

Shortly thereafter, Smith gave a written statement to Wright and an Assistant State's Attorney, in which she identified Bird as the shooter. (*See* Officers' Ex. 12, Smith Statement at 2-3.) The same day she told a grand jury that the shooter was "Bird known as John," and she recognized him because of previous altercations Bird had had with Davis. (Officers' Ex. 15, Grand Jury Tr. at 11-13, 16-18.)

On October 7, 2010, Wright and Neiman arrested plaintiff. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 46; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 60.) On October 10, 2010, plaintiff was charged with Davis' murder and attempted murder of Smith. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 47; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 61.)

Evanston disclosed to the State's Attorney's Office the two Lineup/Photospread Advisory Forms for Smith, the Photographic Line-ups, and one I-Clear Demographic Sheet. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 49; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 64.)

In March 2012, plaintiff filed in the criminal case a motion to suppress Smith's identification, alleging that the photo array procedure was unduly suggestive. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 50; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 65.) During the hearing, plaintiff used the photo lineup spreads and advisory forms as exhibits. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 51; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 66.) The judge presiding over plaintiff's

criminal case denied the motion to suppress. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 54; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 69-70.)

On November 30, 2012, after a two-day bench trial, plaintiff was acquitted of the charges against him. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 55, 59; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 71, 74.)

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Counts I and II, plaintiff alleges that defendants violated his Due Process rights. To defeat their motion on these claims, plaintiff must offer evidence that the officers suppressed material, exculpatory or impeaching evidence from him. *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). "Evidence is 'suppressed' when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Id.* at 567. "Evidence is 'material' if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*

5

The record contains no evidence to support these elements. On the contrary, the undisputed facts show that plaintiff knew before his criminal trial that Smith had been shown two photo lineups and had identified him from only the second because he used the photo lineup spreads and advisory forms during the hearing on his motion to suppress. (*See* Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶ 51; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 66.) Absent evidence that suggests defendants withheld material, exculpatory evidence from him, and plaintiff offers none, defendants are entitled to judgment as a matter of law on the due process claim asserted against them in Counts I and II.[2]

Plaintiff fares no better with the malicious prosecution claim in Count III. To defeat defendants' motion on this claim, plaintiff must offer evidence that they started a criminal proceeding against him with malice and without probable cause, the proceeding ended in plaintiff's favor, and he was damaged as result. *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (1996)). The existence of probable cause is "an absolute bar to an action for malicious prosecution." *Turner v. City of Chi.*, 415 N.E.2d 481, 485 (Ill. App. Ct. 1980). "Probable cause in this sense means such a state of facts . . . as would lead a man of ordinary caution and prudence to believe or to entertain an honest and strong suspicion that the person arrested is guilty." *Id.*

Viewed favorably to plaintiff, the record establishes that defendants had probable cause to initiate the criminal case against him. Specifically, it is undisputed that: (1) plaintiff goes by the nickname "Byrd"; (2) Smith, an eyewitness to the shooting, repeatedly said she recognized the shooter as "Bird," a man who had had several previous altercations with the victim; and (3) Smith

---

[2]Because plaintiff has not created a triable fact issue as to whether his due process rights were violated, the Court does not address the additional elements necessary to impose liability against Evanston on this claim.

identified plaintiff as the shooter "Bird" from a photo array. (Pl.'s Resp. Evanston's LR 56.1(a) Stmt. ¶¶ 5-7, 20-21, 38-42, 60; Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 5-7, 17-18, 42, 44, 46-49, 51-54, 75.) These undisputed facts are sufficient to constitute probable cause, *i.e.*, to make a reasonable person "entertain an honest and strong suspicion that [plaintiff] is guilty." *Turner*, 415 N.E.2d at 485; *see Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) ("When an officer has received his information from some person–normally the putative victim or an eye witness–who it seems reasonable to believe is telling the truth, he has probable cause.") (quotation omitted). Accordingly, defendants are entitled to judgment as a matter of law on the malicious prosecution claim in Count III and the Count IV indemnification claim based on it.

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to plaintiff's claims against defendants, who are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motions for summary judgment [83 & 86] and terminates this case.

**SO ORDERED.**           ENTERED:   November 5, 2015

_____
**HON. JORGE L. ALONSO**
**United States District Judge**